[Crim. No. 1124.    Fourth Dist.    Aug. 30, 1956.]

THE PEOPLE, Respondent, v. IRVIN LEE DORSEY, Appellant.

Alvin G. Greenwald for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of attempted rape, alleged to have been committed on December 9, 1955. A jury found him guilty and he was sentenced to prison. He has appealed from the judgment and from an order denying a new trial.

Around midnight on December 8, the appellant and one Blaylock picked up two girls, with whom they had not been acquainted, at a bar. The four of them briefly visited another bar, and the men offered to take the girls home. The appellant said he had to stop and see a friend on a business matter, and the girls were driven to an unlighted side road in Orange County, where the incidents here in question occurred. Blaylock had intercourse with one of the girls, and the appellant tried to have intercourse with the other girl but finally desisted because of her resistance. This girl suffered a broken finger, and her face was so bruised and scratched that the officers took her to a hospital for treatment shortly after they saw her. Several of her garments were torn and four buttons from her blouse were gone.

As these parties were returning toward home the car was stopped by an officer and they were taken to a police station. An officer in the police station had a conversation with the two men and the two girls at 4:20 a. m. on December 9. He testified that in the presence of the two men the two girls told a story the details of which are similar to that which they told on the witness stand; that after hearing the girls' story he talked to the men; that this appellant admitted, in the presence of the two girls, that he attempted to have intercourse with the one involved in this charge but discontinued his efforts due to her continued resistance; and that the appellant then stated that he had slapped this girl on the side of the face while on a side road in Orange County and knocked her down, that while on top of her he had tried to have intercourse with her, and that her resistance stopped him. About 9:30 on the morning of December 9, another officer took the two girls to the scene where the acts occurred, and they found the four missing buttons from this girl's blouse. About 6 o'clock on the morning of December 9, pictures were taken of the head and face of this girl, which were admitted in evidence.

Toward night on December 9, three officers took statements from the appellant and Blaylock at the sheriff's office. These statements were taken separately and taken down on a tape recording. It appears that these men made these statements voluntarily, but that they did not know that they were being

taken on tape recordings. It appears, without contradiction, that no threat or intimidation was used and that no promises or hopes of reward were offered to them. The tape recording of the statements then made by this appellant was played to the jury during the trial. It was not transcribed and was not brought here as an exhibit, and the record is silent as to what statements were then made by the appellant.

The appellant took the stand and claimed that this girl had wavered between willingness and unwillingness to have intercourse with him, and admitted that he had slapped her. He testified that after she did not want to have intercourse with him he slapped her because she was "hollering and crying." When asked on cross-examination if he did not try to have intercourse with this girl for four or five minutes, he replied: "I would say that the process was about four or five minutes. I wouldn't go so far as to say I was trying to have intercourse with her for four or five minutes." He further admitted that as they were driving back he offered to pay her medical expenses, and to give her money to support herself until she was able to work.

The appellant was charged with attempted rape, and Blaylock was charged with rape in a separate action. By agreement of the parties the two actions were consolidated for trial. On the second morning of the trial, out of the presence of the jury, counsel for the appellant and counsel for Blaylock told the court that each of them had heard the tape recording of the statement made by his client; stated that some of the matter in these recordings would be inadmissible as against the other defendant; and argued that the jury would be unable to distinguish in their minds the matters which were admissible as to one defendant and not admissible as to the other. Both counsel joined in motions that the cases be separated for trial, and that the present jury be allowed to proceed with the trial as to either one of the defendants, leaving the other defendant to be tried separately by another jury at another time. The court took this motion under submission. Later that day, counsel for Blaylock asked the court to order the tape recording transcribed. The court stated that it should be transcribed. The court then asked the court reporter if she had any way of having this transcribed, and the court reporter made a statement to the effect that it was impossible for her to transcribe it. The court then stated that he would listen to the tape recording. The next morning, in the absence of the jury, counsel for the appellant again objected to the introduction of the

tape recording of his statements, and stated that his motion for severance was still pending. The court then granted that motion, stating that "it would be severed as to Blaylock and we will proceed on Dorsey," and that a severance was granted at the request of both defendants. Counsel for appellant then stated that "There was conversation between the counsel, 'Will the other agreement hold?' ''; that he had asked what the agreement was and had been told that he would not be advised at this time; and asked that the record show that "I don't know what such other agreement is." The court replied: "All right, the record so shows it." There is no other reference to this agreement in the record and, like counsel, we do not know what agreement was referred to.

The court then told the jury that a severance of the two cases had been granted on account of things which had come up since the trial started; that the case of Blaylock is now severed from the case of Dorsey; that they would proceed with the Dorsey case and the Blaylock case would trail; and that a mistrial would be declared in the Blaylock case, and that case "will be trailing." Counsel for the appellant then moved for a mistrial of the Dorsey case, and the motion was denied. The trial proceeded, and the tape recording of the conversation with Dorsey was read to the jury. Later, on cross-examination, the appellant was asked whether he had told the officers the truth in making the statements contained "on this tape recording," and he replied: "To the best of my ability."

The appellant first contends that the court erred in granting a mistrial as to one of the defendants and refusing to grant it as to the other. It is argued that testimony of a prejudicial nature had been admitted as to Blaylock and excluded as to Dorsey; that when his motion for mistrial was made it appeared that the evidence was so confusing that the jurors could not be expected to understand that some of the evidence was excluded as to Dorsey; that "a deal" had been entered into between Blaylock and the prosecuting attorney which had been withheld from Dorsey's attorney; and that it could not be otherwise than prejudicial for a jury to observe a court declare a mistrial as to one defendant and see him walk out of court, while the jury was instructed to try the other defendant. With respect to the previous testimony admitted as to Blaylock and excluded as to Dorsey, the court had in all instances properly instructed the jury. The severance was granted at the request of counsel for both defendants, and it

was stated to the court that it was satisfactory to both of them to have the cases severed, to go on with the case as to either one, and to let the case as to the other trail. Later a mistrial was declared as to Blaylock at his own request. Dorsey's request for a mistrial was denied, and we find nothing in the record which would even tend to indicate error in that regard. There was no evidence that "a deal" was entered into by Blaylock and the prosecuting attorney, or concerning its nature, purpose or effect. In any event, the jury knew nothing of it and it could not have prejudiced the rights of the appellant in this action.

It is next contended that the court erred in admitting the tape recording in evidence without giving appellant's counsel "the opportunity to fully inspect and listen to same." It is admitted that in this case the reporter was unable to transcribe the tape recording, but it is argued that it was error for the court to allow its admission in evidence before facts were shown which satisfied the court that the statements were voluntarily made; that the officers did not advise the appellant that a tape recording machine was being used; that no opportunity was given the appellant to examine, correct or explain the purported statements; and that the cumulative effect of these things should render such evidence inadmissible. There was ample evidence that the statements which were taken down on the tape recording were voluntarily made, appellant's counsel had heard the recording played and knew what it contained, and the appellant on the witness stand admitted that he had thus stated the truth to the best of his ability.

It is next contended that the court erred in allowing "certain portions of the tape recording" to be played in the presence of the jury. It is argued that certain portions of the tape recording which were played were objectionable as hearsay, conclusion or as being a leading question, but that it is now impossible for counsel to refer to specific portions of the tape recording in that regard. No prejudice appears, especially in view of appellant's admission that he had told the truth in the matter contained in the recording.

Finally, it is contended that the court erred "in allowing material evidence to be secreted and secreting 'an agreement' between the prosecuting attorney, codefendant and the court." It is argued that if the portions of the record containing the statement of the two girls had been made available to counsel before the jury retired, a different verdict

might have been returned; that those portions of the recording might have shown that the two girls made statements at that time which were different from those they made while on the stand; and that there was a miscarriage of justice because the sentence imposed upon the appellant was stiffer than that imposed upon Blaylock, although the appellant was charged with a lesser offense.

The portion of the recording relating to the conversation with the two girls was not read to the jury, and no request was made that this be done. The record repeatedly shows that counsel for the appellant and counsel for Blaylock had each heard the recording played with respect to statements made by his own client, before any recording was played, and that each attorney had advised the other with respect to the portion he had heard played. It was in no way suggested to the court that it was desired to hear played the portion containing the statements of the two girls. No prejudicial concealment appears, the two girls testified, and there was ample opportunity on cross-examination to inquire as to whether they had ever made any conflicting statements. The appellant's testimony as a whole tended to confirm the testimony given by the two girls; and the specific testimony mentioned, from which the appellant draws inferences favorable to him, all appears in the testimony given by the girls. The appellant states that Blaylock subsequently pleaded guilty and was sentenced to six months in the county jail. Assuming that Blaylock pleaded guilty and given such a sentence, that fact is not controlling here. Moreover, the testimony of the girl involved in that charge, insofar as it appears in this record, strongly indicates that she actually consented, and that a conviction in that case would have been very doubtful. The evidence of appellant's guilt is unusually strong and after reading the entire record we are unable to see how anyone could feel that a miscarriage of justice has occurred. The purpose of the brutal attack shown by the evidence clearly appears beyond any reasonable doubt.

The judgment and order are affirmed.

Mussell, J., and Burch, J., pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.